IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED
APR 1 2 2010
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**BRIDGETT EDWARDS**
135 Center Street
Emporia, Virginia 23847

PLAINTIFF,

v.

CIVIL ACTION NO.
2:10cv165

**MURPHY- BROWN, L.L.C.,**

DEFENDANT.

Serve: CT Corporation Systems
Registered Agent
Murphy – Brown, L.L.C.
4701 Cox Road, Ste. 301
Glen Allen, Virginia 23060

PLAINTIFF DEMANDS
TRIAL BY JURY

## COMPLAINT

COMES NOW Plaintiff BRIDGETT EDWARDS ("Plaintiff"), by counsel, and for her Complaint against Defendant, MURPHY-BROWN L.L.C. ("Defendant") of the City of Waverly, Virginia, states as follows:

### NATURE OF THE CLAIMS

This is an action for declaratory relief, compensatory damages, and other appropriate relief, legal and equitable brought by Plaintiff to redress Defendant's unlawful employment practices of sex discrimination, sexual harassment, and retaliation in violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* as amended, (Supp. II. 1991) ("Title VII").

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 because this action involves federal questions regarding the deprivation of Plaintiff's rights under federal civil rights laws.

2. Venue is proper in this district pursuant to § 2000e-(5)(f)(3), because the unlawful employment practices occurred in this district, the relevant employment records are maintained and administered in this district, and pursuant to 28 U.S.C. § 1391(b), Defendant is located in this district.

## PARTIES

3. Plaintiff is an African American female citizen of the United States of America and at all times relevant to this cause of action, was a resident of Franklin, Virginia and an employee of defendant Murphy-Brown, L.L.C.

4. Defendant, at all times relevant to this cause of action, has been organized and existing under the laws of the Commonwealth of Virginia, and qualified to do business in the Eastern District of Virginia.

5. Defendant is an "employer" within the meaning of sections 703(a) and 704(a) of Title VII in that it employed more than the requisite number of persons for duration under Title VII.

## PROCEDURAL REQUIREMENTS

6. Plaintiff filed a timely charge of sex discrimination, sexual harassment, and retaliation, against Defendant with the United States Equal Employment Opportunity Commission ("EEOC"), and received her Notice of Right to Sue within Ninety (90) days of filing this action.

## **FACTUAL ALLEGATIONS**

7. Plaintiff began working for Defendant on or about April 8, 1996.

8. Defendant owns and operates a hog breeding and farrowing facility at Farm 8508 ("Farm 8") in Wakefield, Virginia. Plaintiff has worked solely on Farm 8 in the farrowing department of the farm since she began her employment with Defendant. IN this area the hogs are brought to deliver their litter after successful impregnation in breeding area of the farm.

9. Plaintiff's duties included taking care of the pregnant sow, assisting their labor and delivery, maintaining the health of the sows, administering medication as indicated and prescribed, operating the feeders and watering nipples, cleaning and sanitizing the area, and processing the newborn sows to the nursery to await transfer for market sale.

10. Plaintiff obtained high job performance evaluations throughout her employment and was promoted from her starting position of production technician to herds person four (4).

11. Between 2003 and the time of the event, defendant began hiring a number of Hispanic males to work on the hog farms. These employees included, but were not limited to, Umberto Santiago, Miguel Vazquez, Salvador Hernandez, Jose Rodriquez, Ignacio Rosario, Miquel Navarro, and Leonardo (Talon) Rodriquez.

12. During this time, Plaintiff's Hispanic co-workers began engaging in a series of offensive, humiliating and sexually harassing acts including but not limited to:

    A. Touching plaintiff on the shoulders;

    B. Rubbing Plaintiff's leg and foot;

       C. Subjecting Plaintiff to extraordinary scrutiny;

       D. Making disparaging remarks about Plaintiff's race

       E. Smirking, laughing, and gesturing towards Plaintiff.

13     As of 2006, only one other female, Felicia Tennessee, worked with Plaintiff in the farrowing room. This female was also subjected to the same type of humiliating, offensive and sexually harassing conduct by the male employees, including offensive rubbing of her arms and making sexual comments to her. Both females after each demanded that the males stop the harassment and reported the behavior to their immediate supervisor. The management took no disciplinary action against these male employees. The sexual harassment against Plaintiff persisted.

14.    Upon information and belief, Plaintiff learned that one of the workers had been caught masturbating in a woman's panties on a nearby farm. Some of the male workers on the farm where Plaintiff worked laughed and talked about the incident in Plaintiff's presence. Management was informed, but, took no disciplinary action against these employees. The sexual harassment against Plaintiff persisted.

15.    A graphic sexual picture depicting a male and female sex organs was drawn on one of the sow processing cards which was sent with the transferred hogs from the breeding area, where Miquel Navarro and Leonoardo Talon worked, to the farrowing room where the two female employees, Plaintiff and Felicia Tennessee. Plaintiff informed her supervisor, but no disciplinary action or investigation took place. The sexual harassment against Plaintiff persisted.

16.    Plaintiff's co-workers spoke very little English. Plaintiff was able to determine from the scant Spanish she understood that the male employees were describing female

body parts and pointing to Plaintiff and her coworker, further subjecting plaintiff to a hostile and abusive work environment and adding to Plaintiff's embarrassment and humiliation.

17. In December 2007, in violation of Defendant's policy, Miquel Navarro brought a digital camera to work and took Plaintiff's picture against her wishes. This violation was reported, but no action was taken. The men continued to group together and talk among themselves while pointing and gesturing towards Plaintiff and her female co-worker. Even though this conduct was reported to management, they took no disciplinary action against these employees. The sexual harassment against Plaintiff persisted.

18. Because Defendant breeds hogs for human consumption, it requires farm employees to follow strict sanitary procedures. Plaintiff and her female co-worker were therefore required to shower before entering the farrowing room and put on their uniforms. At the close of the day they changed out of their work uniforms and usually showered before going home. At all relevant times, Plaintiff and Bridgett Edwards were the only females in the farrowing room and on the entire farm except for one female supervisor, Honor Lee Flournoy. They underwent the shower routine on a daily basis.

19. On or about January 24, 2008, Plaintiff and her female co-worker, Felicia Tennessee entered the women's shower room to shower before leaving for the day. Due to the cold outdoor temperature, both females decided after entering the shower room to just disrobe, forego the shower, and change into their street clothes.. When Ms. Tennessee opened the door to the shower room to exit into the area where the sinks were located, she encountered Salvatore Hernandez kneeling against the shower door.

Surprised by the door opening, Salvatore fell into the women's shower room. Upon seeing Plaintiff and Ms. Tennessee, Salvatore jumped up and ran out of the area.

20. An examination of the door revealed three drilled holes in the door, two at the level of the doorknob and one hole at eye level on the door, which could only be detected with the lights off.

21. At the time of the occurrence, Plaintiff, Ms. Tennessee and Salvatore were the only employees on the farm. Therefore, Plaintiff reported the incident to her supervisor on the next day, who advised her that she could have someone patch up the holes, but would not replace the door.

22. When Plaintiff later asked Ms Flournoy, what the employer planned to do about the women's shower door and the employees who had peeped at the women through the drilled holes, Ms. Flournoy replied that she had done all she could do. She did not plan to fire Salvatore or determine how many other male employees might be involved because to fire any of the male employees would leave the farm short-handed.

23. When Plaintiff informed the production manager Lewis Epps, who was Ms. Flournoy's supervisor, about the incident and her fear of working alone in her area and taking showers, Mr. Epps laughed about the holes in the women's shower door and proposed that perhaps the women had drilled the holes in the door themselves. Short of patching the holes, the management took no other action and failed to investigate the matter. When Plaintiff called Laura Brooks, assistant manager at Human Resources, she discovered that none of her reports had reached the office and no disciplinary measures would be taken against any of the offending male employees.

24. Salvatore continued to work on the farm in his same area as did any other male employees who participated, or, may have participated, in peeking into the women's shower room with him. Management never investigated to see who was involved. No one was disciplined.

25. When Plaintiff continued to describe her humiliation and her fear of working among the male employees, management informed Plaintiff it was going to transfer Plaintiff and her female co-worker Felicia Tennessee to another farm. Plaintiff was told to report to the new farm on February 1, 2008, a farm, where it was Plaintiff understands, that the male employees participated in the same type of sexual harassing behavior as they did at Farm 8.

26. Plaintiff has been under the care of physicians since the shower door incident for anxiety attacks, depression and stress.

27. Salvatore Rodriquez was later arrested, fined and sentenced for his criminal behavior of peeping at the women through the drilled holes in the women's shower room, but only after Plaintiff reported his actions to the police. His arrest occurred solely because Plaintiff reported his crime to the police department. Defendant never called the police to report Salvatore's criminal act. Only after Salvatore was arrested and taken away from Farm 8, and charged and sentenced, did Defendant terminate him.

## COUNT I
### (Sexual Harassment in violation of Title VII).

28. Plaintiff herein restates and re-alleges by reference each and every allegation in ¶¶ 1-27 as if set forth fully herein.

29. Defendant has discriminated against Plaintiff on the basis of her gender in violation of Title VII by allowing continual sexual harassment of Plaintiff by her male co-workers thereby creating a sexually hostile environment.

30. Defendant has discriminated against Plaintiff on the basis of her gender in violation of 42 U.S.C. § 1981 by fostering, accepting, ratifying and/or failing to prevent a sexually hostile work environment that included among other things, severe and pervasive sexual harassment of Plaintiff by her male co-workers.

31. Defendant has discriminated against Plaintiff on the basis of her gender in violation of 42 U.S.C. § 1981 by engaging in, tolerating or failing to prevent the sexual harassment as alleged above and by failing to take adequate affirmative action to correct and redress the unlawful employment practices perpetrated against the Plaintiff.

32. Plaintiff believes and avers that the effect of Defendant's sexual harassment and unlawful employment practices against her has been to limit, classify and discriminate against her in ways that jeopardize and tend to deprive her of her equal employment opportunities in violation of 42 U.S.C. § 1981.

33. Plaintiff is now suffering and will continue to suffer irreparable injury from this unlawful discrimination.

34. Defendant is liable for the sexual harassment and unlawful employment practices against Plaintiff because even though Plaintiff informed Defendant about the sexual harassment, Defendant did not *respond with remedial action reasonably calculated to end the harassment. Equal Employment Opportunity Commission v. Central Wholesalers, Inc.,* 573.3d 167, 177 (4th Cir.2009).

35. As a direct and proximate result of Defendant's discriminatory conduct in violation of § 1981, Plaintiff has suffered, and continues to suffer monetary and/or economic harm, including, but, not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of damages and other relief.

36. As a direct and proximate result of Defendant's discriminatory conduct in violation of 42 U.S.C. § 1981, Plaintiff has suffered, and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which she is entitled to an award of damages.

## COUNT II

### (Sexual Discrimination and Retaliation in Violation of Title VII)

37. Plaintiff herein restates and re-alleges by reference each and every allegation in ¶¶ 1-36, as if set forth fully herein.

38. Defendant has discriminated and retaliated against Plaintiff on the basis of her gender in violation of Title VII by denying her a hostile free work environment free of unlawful discrimination and harassment. When Defendant was put on notice of the male workers' unwelcome sexual acts and invasion of Plaintiff's privacy by watching her and another female co-worker in the shower room, Defendant's informed Plaintiff that she and her female co-worker were to be transferred to another farm instead of disciplining the perpetrators for their harassment.

39. Plaintiff had never worked on the farm to which she was being transferred. Further, upon information and belief, Plaintiff was aware of ongoing unlawful sexual

conduct at this new assignment. In essence, Plaintiff was being transferred from one hostile work environment to another while the perpetrators remained undisciplined, and employed in the same area of their present employment.

41. As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer monetary and/or economic harm, including, but, not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of damages and other relief.

42. As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which she is entitled to an award of damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays this Court enter judgment for Plaintiff and against Defendant, and order the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States.

B. An order directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory treatment and unlawful conduct, including, but not limited to: (1) reinstatement of job status and rank on Farm 8; (2) assurance that the effects of Defendant's employment practices will not continue to affect

Plaintiff's employment and personal life; and (3) assurance that Plaintiff's position for future promotions and all other job benefits remain intact and unaffected by this lawsuit.

C. An award of damages of Five Hundred Thousand Dollars ($500,000.00) plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment, mental anguish, humiliation, embarrassment, stress, anxiety, emotional pain and suffering, emotional distress, and all monetary and/or non-monetary losses suffered by Plaintiff.

D. An award of costs and expenses incurred by Plaintiff in this action, and Plaintiff's attorneys' fees to the fullest extent permitted by law this action.

E. Such other and further relief to Plaintiff as the Court deems just and proper.

Respectfully submitted,
BRIDGETT EDWARDS

By _[signature]_
Counsel

Henry L. Marsh, III, VSB No. 05691
Frederick H. Marsh, VSB No. 40133
Hill, Tucker & Marsh
422 E. Franklin Street, Suite 301
Richmond, VA, 23219-2226
Phone (804) 648-9073
Facsimile (804) 648-2116