IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



BRIDGETT EDWARDS,

    Plaintiff,

v.

                                       Civil Action No. 2:10cv165

MURPHY-BROWN, L.L.C.,

    Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Murphy-Brown L.L.C.'s ("Murphy-Brown") Motion to Dismiss Count II of the Amended Complaint filed by Plaintiff Bridgett Edwards ("Plaintiff"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, Defendant's Motion to Dismiss is **DENIED**.

### I. FACTS AND PROCEDURAL HISTORY[1]

A more complete recitation of the facts was set forth in

---

[1] The facts recited here are drawn from the Plaintiff's Amended Complaint and are assumed true for the purpose of deciding the motion currently before the Court. They are not to be considered factual findings for any purpose other than consideration of the pending motion to dismiss. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2008) ("[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint.").

this Court's earlier Opinion and Order. <u>Edwards v. Murphy-Brown, L.L.C.</u>, No. 2:10cv165, 2011 U.S. Dist. LEXIS 4088, at *1-8 (E.D. Va. Jan. 4, 2011).

Plaintiff alleges that, in 2002, she began experiencing sexually offensive behavior from "male Mexican migrant co-workers" while working at Murphy-Brown. Am. Compl. ¶¶ 11-13. Plaintiff experienced several incidents over approximately six years. After each event, Plaintiff reported the offending behavior to her immediate supervisor, Honor Lee Flournoy, who was under the direction of Lewis Epps ("Epps"). Am. Compl. ¶ 13. According to the Amended Complaint, no disciplinary action was taken in response to the reports. <u>Id.</u>

The crowning event of alleged discrimination occurred on January 24, 2008. Am. Compl. ¶ 19. On this day, Plaintiff and her co-worker, Felicia Tennessee ("Tennessee"), who often shower at work at the conclusion of the work day, altered their routine because of the cold outdoor temperature. <u>Id.</u> Instead of showering, they merely changed into "street clothes" prior to leaving work. <u>Id.</u> As Tennessee opened the door of the shower room to exit, she "encountered Salvador Hernandez,[2] a.k.a Leonardo Talon, kneeling against the shower door." <u>Id.</u> "Surprised by the door opening, Hernandez, a.k.a. Talon, lost

---

[2] Allegedly, this man had been hired several times at Murphy-Brown under different names such as Leonardo "Talon" or Rodriguez. Am. Compl. ¶ 19.

2

his balance stumbling into the women's shower room." Id. According to the Amended Complaint, Hernandez jumped up and "guiltily" ran from the room. Id. Discovering Hernandez there led to an examination of the door and the discovery of three drilled peep-holes. Am. Compl. ¶ 20.

The next day, Plaintiff and Tennessee reported the shower door incident to their supervisor, Ms. Flournoy. Am. Compl. ¶ 21. Ms. Flournoy had the door patched. However, when Plaintiff asked what Defendant intended to do about the incident, the Amended Complaint states that Ms. Flournoy indicated she had done all she could by patching the door. Am. Compl. ¶ 22. Ms. Flournoy did not conduct an investigation or take disciplinary action against any of the "male Mexican" employees. Am. Compl. ¶¶ 22, 23.

About a week later, Tennessee complained to Ms. Flournoy that she could no longer take the stress caused by the incident and the fear of others watching her while she showered. Am. Compl. ¶ 23. Tennessee and Plaintiff decided to go to Human Resources. Id. At Human Resources, the women waited fifteen to twenty minutes to see Mary Beth Williams, the department head. Id. However, instead of seeing Ms. Williams, they were met by Epps and Ms. Williams' assistant, Ms. Brooks. Id. During their meeting, the Amended Complaint alleges that Epps, while accusing the women of drilling the holes themselves, maintained a joking

demeanor. Id. Epps also made it clear to the women that he would not protect them from harassing behavior of the "male Mexican migrant workers at any farm under his management" and if this was a problem, they could quit. Id.

Plaintiff described her humiliation and fear stemming from the work environment to Epps. Am. Compl. ¶ 25. In response, Epps decided to reassign Plaintiff to nearby Farm 6, a place where Plaintiff believed the harassment would continue. Am. Compl. ¶ 23. Plaintiff alleges that Epps' decision to transfer the Plaintiff rather than remedy the situation was an implicit message to the "migrant Mexican men" that Plaintiff and her co-worker were "fair game" for harassment. Am. Compl. ¶ 35. Further, the Amended Complaint states that this transfer, along with Epps' concerted effort to "deny access to anyone with the Defendant who might help [Plaintiff] have her rights enforced," was a designed ploy to encourage Plaintiff to quit her job. Am. Compl. ¶ 36. The Plaintiff contends that Epps' conduct was in direct response to her "going around him" with her complaints. Id. Thus, Plaintiff attributes Epps' belittling demeanor and reassignment decision to the fact that the women attempted to go above him in the chain of reporting. Id.

On April 12, 2010, Plaintiff filed her original Complaint in this matter, alleging two counts. Defendant filed a Motion to Dismiss the Complaint on July 7, 2010. This Court issued an

4

Opinion and Order denying Defendant's motion to dismiss Count I and granting the motion to dismiss Count II of the Complaint. Nevertheless, the Court, *sua sponte*, granted Plaintiff leave to amend Count II of the Complaint, to provide an opportunity for her to fully plead a *prima facie* case of retaliation. Plaintiff filed an Amended Complaint expanding Count II on January 20, 2011. Defendant's Motion to Dismiss Count II followed on February 7, 2011 and is currently pending before this court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. STANDARD OF REVIEW[3]

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Requiring a claim be plausible does not impose a probability requirement at the pleading stage. Id. at 556. However, it does ask for more than a "sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

---

[3] The following description of the appropriate standard of review is taken directly from this Court's original Opinion and Order. Edwards, 2011 U.S. Dist. LEXIS 4088, at *13-16.

5

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A 12(b)(6) motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Although the truth of the facts alleged is assumed, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id.

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ." Bell Atl. Corp., 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Fair notice is provided by

setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." Id. at 555 (internal citations omitted). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." Id. at 556 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). A complaint may therefore survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Where a motion to dismiss is filed with respect to a civil rights claim, the Court "must be 'especially solicitous' of the wrongs alleged." It "must not dismiss the complaint 'unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" Harrison v. U.S. Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988) (internal citation omitted).

### III. DISCUSSION

#### A. <u>Timeliness of the Amended Complaint</u>

Defendant argues in its Motion to Dismiss that the Amended Complaint was not timely filed and should be dismissed. In the Court's previous Opinion and Order in this case, the Court, *sua*

*sponte*, granted "[p]laintiff leave to amend [Count II] within fifteen (15) days of the entry of this Opinion and Order." Edwards, 2011 U.S. Dist. LEXIS 4088, at *69. The Opinion and Order was stamped "filed on January 4, 2011." Id. at *1. However, the Clerk's office did not enter the Opinion and Order electronically on the Case Management/Electronic Case Filing ("CM/ECF") system and give email notice to counsel of the filing until January 5, 2011. See ECF Docket No. 21. In fact, the January 4, 2011 docket notation reflects with the following words that such Opinion and Order was not entered until January 5, 2011: "(Entered: 1/5/2011)." Due to the difference in the date on which the Opinion and Order was stamped filed and the date of entry into the CM/ECF system, Defendant relies on the earlier of the two dates and contends that Plaintiff's Amended Complaint was not timely when it was filed on January 20, 2011.

Rule 6 of the Federal Rules of Civil Procedure governs the computation of time for complying with court deadlines. For deadlines given in numbers of days, the day of the triggering event is excluded from the period. Fed. R. Civ. P. 6(a)(1)(A). Then, every day is counted forward including weekends and holidays.[4] Fed. R. Civ. P. 6(a)(1)(B). Therefore, depending on

---

[4] If the period ends on a holiday or weekend, the time is extended until the next business day. Fed. R. Civ. P. 6(a)(1)(C). This provision is not applicable because the fifteen day period ended on a normal weekday.

whether the triggering event was the filing on January 4, 2011 or the entry onto CM/ECF on January 5, 2011, the deadline would have been either Wednesday, January 19, 2011 or Thursday, January 20, 2011.

The Local Rules for the Eastern District of Virginia provide that the <u>Electronic Case Filing Policies and Procedures</u> manual ("Manual") "governs if there is a conflict between it and these Local Rules as to the technicalities of electronic case filing." E.D. Va. Loc. Civil Rule 1(A). Because the Local Rules are silent on this issue, the Court will look to the Manual. The Manual states the following:

> Electronic transmission of a document to ECF in accordance with these procedures, **together with** the transmission of a Notice of Electronic Filing (NEF) from the Court with a hyperlink to the electronically filed document, **constitutes filing of the document** for all purposes of the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Local Rules of this Court.

<u>EDVA Electronic Case Filing Policies and Procedures Manual</u>, Chapter Four, pg. 30 (2010), <u>available at</u> http://www.vaed.uscourts.gov/ecf/E-FilingPoliciesandProcedures-new.htm (emphasis added). Furthermore, "[t]he time of filing is not when the process of filing the document is begun, but when the [Notice of Electronic Filing] is generated." <u>Id.</u> at Chapter Four, pg. 31. These provisions apply in the context of parties filing their court documents, and because the phrase "within fifteen (15)

days of the entry of this Opinion and Order" does not specify whether "entry" means stamping "filed" on the Opinion and Order or entering it electronically on CM/ECF with the resulting NEF transmission, the Court will apply the rule stated in the Manual and calculate the time in the more expansive manner provided there. This approach is consistent with the position taken by other federal district courts. See Emblaze Ltd. v. Apple Inc., No. 10 Civ. 5713 (PKC), 2011 U.S. Dist. LEXIS 60878, *3 (S.D.N.Y. June 3, 2011) (noting a document is deemed filed on the date and time stated on the NEF). Therefore, since the triggering date was January 5, 2011, Plaintiff's Amended Complaint was timely.

### B. Retaliation

In its Motion to Dismiss Count II of the Amended Complaint, Defendant contends that Plaintiff's allegations in the Amended Complaint also "do not cure the insufficiency the Court found in Count Two of the initial Complaint" and do not state a claim for retaliation in violation of Title VII on which relief can be granted. Mem. Supp. Def.'s Mot. to Dismiss Count Two Am. Compl. 3. To address this contention, the Court examines the requirements of a Title VII retaliation claim.

Title VII of the Civil Rights Act of 1964 states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has

opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). This provision makes it unlawful to retaliate against an employee for asserting her rights under Title VII.

In order to succeed in a retaliation claim under Title VII, an employee must establish a *prima facie* case showing that "(1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008) (citing Holland v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007)). Defendant argues that Plaintiff's claim fails on the second requirement.[5] Mem. Supp. Def.'s Mot. to Dismiss Count Two Am. Compl. 5-6. The Court addresses these requirements below.

---

[5] The Court's January 4, 2011 Opinion and Order found that Plaintiff's original Complaint failed to plead an adverse employment action sufficient to make out a *prima facie* case of Title VII retaliation. Edwards, 2011 U.S. Dist. LEXIS 4088, at *54. Because of that finding, the Court indicated it need "not address Defendant's second contention that Plaintiff did not engage in a 'protected employment activity.'" Id. (internal citations omitted). For that reason, the Court will in this footnote briefly address the "protected employment activity" contention.

The first requirement for a retaliation claim is that an employee has engaged in an activity protected by Title VII. Ziskie, 574 F.3d at 229. Specifically, a reporting employee "must have an objectively reasonable belief that a violation is

11

In Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss the Amended Complaint, Plaintiff argues that the Court's previous Opinion and Order, with respect to Title VII retaliation claims was unclear or legally erroneous. In light of this argument, the Court finds it necessary to briefly review the recent case law on such retaliation claims.

A plaintiff alleging a retaliation claim is required to plead facts that plausibly show an adverse action taken by

---

actually occurring based on circumstances that the employee observes and reasonably believes." Jordan v. Alternative Res. Corp., 458 F.3d 332, 341 (4th Cir. 2006). Circumstances of discrimination that are protected by Title VII include "maintaining a . . . hostile work environment." Id. at 339. Therefore, based on the facts alleged in the Amended Complaint, the Court must assess whether the situation warranted an objectively reasonable belief that circumstances at Farm 8 were egregious enough to alter the terms of employment or create a hostile work environment such that the protection of Title VII applied. Id.
Plaintiff alleges a series of harassing events that culminated in finding Hernandez in the doorway of the women's bathroom and three holes in the door. While Defendant argued in its original motion to dismiss that "neither the 2007 picture-taking allegations nor the 2008 pinhole discovery would lead a reasonable person to conclude Title VII had been violated," Def.'s Reply Mem. Supp. Mot. to Dismiss Original Compl. 11-12, these circumstances could plausibly lead a reasonable person to conclude that "a violation is actually occurring." Jordan, 458 F.3d at 341. This conclusion is consistent with the Court's holding in its earlier Opinion and Order that Plaintiff's allegations of a hostile work environment were plausible enough to withstand a motion to dismiss. Edwards, 2011 U.S. Dist. LEXIS 4088, at *68. As a result, because a reasonable person could have concluded that the work conditions at Farm 8 were unlawful and that any complaints would be protected by the antiretaliation provision of Title VII, Plaintiff has alleged facts sufficient to satisfy the first element of the *prima facie* case.

defendant in response to her asserting rights protected by Title VII. In <u>Burlington Northern & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006), the Supreme Court was faced with a circuit split regarding the proper test for determining whether an employer had taken adverse action in the context of a Title VII retaliation claim. The Supreme Court noted that some circuits required the adverse employment action be a "materially adverse change in the terms and conditions of employment" or "resul[t] in an adverse effect on the terms, conditions, or benefits of employment." <u>Id.</u> at 60 (internal quotations and citations omitted). Whereas, according to the Supreme Court, other circuits had only required that the employer's actions "would likely have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Id.</u> (internal quotations and citations omitted).

After a careful comparison between the language and purposes of the substantive antidiscrimination provision of Title VII and the title's antiretaliation section, the Supreme Court concluded that the antiretaliation provision protects against a broader array of employer conduct than the antidiscrimination provision of Title VII. <u>Id.</u> at 67-68. The Supreme Court also concluded that "[t]he scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." <u>Id.</u> at 67. As a

result, the Supreme Court held that the adverse action component of the antiretaliation provision "is not limited to discriminatory actions that affect the terms and conditions of employment." Id. at 64. Instead, the adverse action component of Title VII's antiretaliation provision can be satisfied by showing that the employer took "materially adverse" action, in response to an employee engaging in a protect activity, "which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (internal quotations and citations omitted); accord Edwards, 2011 U.S. Dist. LEXIS 4088, at *65. The Supreme Court spoke in terms of "*material* adversity" to differentiate employer conduct that was merely trivial, and thus not a Title VII violation, from employer conduct that was of greater gravity, and therefore implicated Title VII. Burlington Ne., 548 U.S. at 68.

In the context of job reassignment allegations, as in this case, the Supreme Court has stated that, although a job reassignment is not automatically actionable, it may be "materially adverse depend[ing] upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Id. at 71 (internal quotations and citations omitted). While changes to the terms, conditions, or

14

benefits of the plaintiff's employment are factors to be considered when evaluating "all the circumstances," the lack of such changes is not dispositive on the adverse action component of a retaliation claim. See id. at 64 ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."); see also Darveau v. Detecon, Inc., 515 F.3d 334, 341, 343 (4th Cir. 2008) (holding that plaintiff's retaliation claim involving a lawsuit filed against him by his past employer with malicious intent was enough of an adverse action to survive a motion to dismiss, despite the fact that the plaintiff had left the employment six months before the lawsuit was filed); Lettieri v. Equant Inc., 478 F.3d 640, 650 n.2 (4th Cir. 2007) (noting that the Supreme Court's decision in Burlington Northern broadened the Fourth Circuit's standard beyond the terms and conditions of employment for the second element of a prima facie case of retaliation). Therefore, all circumstances indicating that an action was harmful and materially adverse to the employee should be considered.

In the present case, Plaintiff does not claim that Defendant altered the terms, benefits, or conditions of her employment by reassigning her to a similar position at nearby Farm 6. If there were no additional allegations concerning Plaintiff's transfer besides a mere lateral reassignment, such

15

allegations alone would not likely rise to the level of material adversity. See Lucero v. Nettle Creek Sch. Corp., 566 F.3d 720, 729-30 (7th Cir. 2009) (holding, in an appeal from summary judgment, that reassignment to teach 7th grade instead of 12th grade without a change in compensation or school location was not materially adverse such that it would dissuade a reasonable person from making a claim of discrimination even though the new position was "less prestigious"); see also Sturdivant v. Geren, No. 1:09cv586, 2009 U.S. Dist. LEXIS 109953, *20 (E.D. Va. Nov. 19, 2009) (noting, in the summary judgment context, that "[w]hen courts have addressed the issue of involuntary transfer in the retaliation context, they have similarly held, even after Burlington Northern, that such reassignment did not constitute an adverse employment action."); Rivera v. Prince William Cnty. Sch. Bd., No. 1:09cv341, 2009 U.S. Dist. LEXIS 63647, *20-21 (E.D. Va. July 22, 2009) (dismissing a retaliation claim based on a transfer and stating "[a] transfer to Dumfries as opposed to a school and grade level that Ms. Rivera preferred does not mean that the transfer had a significant detrimental effect . . . because Ms. Rivera does not allege that the transfer required her to take a reduction in pay or that it otherwise reduced her future job opportunities."). However, in the Amended Complaint, Plaintiff describes with greater detail the circumstances surrounding her reassignment to Farm 6.

16

Plaintiff ascribes to Epps a flippant and belittling demeanor as he refused to aid the women, deciding instead to reassign the Plaintiff to a farm where discrimination existed. Plaintiff also describes Epps' calculated power play designed to deter complaints and to keep the sexual harassment claims from reaching management at Human Resources. Additionally, Plaintiff implies that the reassignment was an implicit message to the alleged harassers that the Plaintiff and her co-worker were "fair game" and that the harassment could continue. Moreover, Plaintiff alleges that the reassignment was a ploy designed to get Plaintiff to quit her job.

While such allegations must be proven in order for Plaintiff to ultimately prevail on this issue, at the motion to dismiss stage, her Amended Complaint plausibly alleges materially adverse conduct that would dissuade a reasonable person from raising a claim of discrimination. Thus, Plaintiff has alleged facts sufficient to state a *prima facie* case of retaliation upon which relief could be granted.

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff properly filed the Amended Complaint on January 20, 2011, within the fifteen day window. Furthermore, with regard to the retaliation claim, the Court holds that Plaintiff has pled facts that allege a *prima facie* case of retaliation such

17

that the claim may be pursued further. Therefore, Defendant's Motion to Dismiss is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ MSD
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 13, 2011