IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BRIDGETT EDWARDS,

     Plaintiff,

v.                                          Civil Action No.: 2:10cv165

MURPHY-BROWN, L.L.C.,

     Defendant.

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESSES

Pursuant to Federal Rule of Evidence 702 and Federal Rules of Civil Procedure 26(a)(2)(B) and 37(c)(1), Defendant Murphy-Brown, L.L.C. ("Defendant" or "Murphy-Brown"), by counsel, moves this Court to strike the Plaintiff's two proposed expert witnesses, Angelina Espinosa-Guanzon, M.D. and Gary Rotfus, L.C.S.W.

Plaintiff Bridgett Edwards has identified two proposed experts, but only submitted a "disclosure" for one of them. The one "disclosure" submitted is only one paragraph long and does not come close even to minimal adequacy under the Rules. It does not contain the mandatory elements required under the Rules and is so full of factual errors as to be unworthy of any credence. Both experts should be excluded.

## BACKGROUND

### The Claim

At the heart of Plaintiff's Amended Complaint is an incident that occurred on January 24, 2008, when Plaintiff came upon a co-worker whom she alleges may have been looking through three small holes drilled in the door to the woman's shower room. Plaintiff was clothed at the time; the door was promptly covered, caulked and then replaced; and the co-worker was fired.

1

Within a week, Plaintiff stopped coming to work. Ms. Edwards now claims she is permanently and totally disabled from any productive work because of this incident, and has asserted that she continues to suffer from Post Traumatic Stress Disorder ("PTSD").

      <u>The Proposed Experts: Dr. Espinosa-Guanzon</u>

Plaintiff has identified Angelina Espinosa-Guanzon, M.D. as an expert witness whose testimony Plaintiff will offer at trial; however, Plaintiff did not submit any expert report or any Rule 26(a)(2)(B) disclosures whatsoever regarding Dr. Espinosa-Guanzon.

      <u>The Proposed Experts: Mr. Rotfus</u>

Plaintiff also has identified a social worker, Gary Rotfus, L.C.S.W., as an expert witness whose testimony she will offer in this matter. Plaintiff submitted a one-page report from Mr. Rotfus with no additional disclosures required under Rule 26(a)(2)(B).[1] Mr. Rotfus' report contains statements that are inconsistent with the allegations of Plaintiff's Amended Complaint, as well as uncontested facts established during discovery. For example, the report states that "[w]hile changing in the women's locker room, it was discovered that a male worker was 'peeping' through a hole in the door." (Expert Disclosure of Gary Rotfus, LCSW, Ex. 1.) The undisputed facts show that Plaintiff's co-worker, Ms. Felicia Tennessee, opened the door while both women were fully clothed and found Mr. Hernandez in the area outside the door. (Am. Compl. ¶ 19.) There is nothing to support an inference, as Mr. Rotfus' report suggests, that Plaintiff was peeped on while in a state of undress.

Additionally, Mr. Rotfus' report states that "[t]here were at least several men in the vicinity when this incident occurred." However, Plaintiff's Amended Complaint includes no such allegation. In her Amended Complaint, Plaintiff stated that she encountered one Hispanic

---

1      Plaintiff's expert disclosures were untimely. Plaintiff's disclosures were due on August 15, 2011. Defendant's counsel did not receive Mr. Rotfus' report until August 29, 2011.

farm worker, Mr. Hernandez, as the door opened.  (Am. Compl. ¶ 19.)  Further, Plaintiff testified in her deposition that at the time of the incident, the only individuals at the farm were Plaintiff, Ms. Tennessee, "and one other worker there on the farm.  The rest had gone home early." (Edwards Dep. 15, Ex. 2.)

Mr. Rotfus' report and "diagnosis" (he is not a physician) is largely predicated on the proposition that Ms. Edwards "was not taken serious" after reporting the door incident to management and "there was not a thorough investigation."  However, these statements conflict with deposition testimony that Plaintiff's supervisor investigated the incident between 6:30 a.m. and 7:00 a.m. the following morning (after learning of the incident the previous evening); ensured the holes were covered immediately with paper and then with caulk, and finally covered with a towel.  A few days later, the whole door was replaced.  (Flournoy Dep. 26-27, 42, Ex. 3; Epps Dep. 22, Ex. 4.)  Additionally, Human Resource representatives interviewed farm workers about the incident, met with Plaintiff to discuss options, and worked with Plaintiff to transfer her to a nearby farm after learning of her continued uneasiness at Farm 8.   (Brooks Dep. 20-24, 39-40, Ex. 5.)  Further, upon learning that Mr. Hernandez pleaded guilty to a criminal charge related to this incident, Defendant terminated Mr. Hernandez's employment.[2]

To support his Post Traumatic Stress Disorder diagnosis, Mr. Rotfus states that Plaintiff has experienced "flashbacks of the locker room incident."  This statement directly contradicts Plaintiff's sworn deposition testimony that she has experienced no such flashbacks.

> Q:  This was your conscious thinking about this, right?  You weren't having – you weren't seeing things, **you weren't having flashbacks or dreams about it or anything like that**; is that correct?

---

[2]     Mr. Hernandez was terminated despite the fact that he maintained his innocence.  Mr. Hernandez explained to Defendant's Human Resource Manager, Ms. Mary Beth Williams, that the person who accompanied Mr. Hernandez to court to translate for him told him that if he pleaded guilty to the charge "then this would all be over." (Williams Dep. 10., Ex. 6.)  Nevertheless, Defendant terminated Mr. Hernandez because of his guilty plea.  (*Id.*)

A:  **No**.  Mentally, it was disturbing for me –

Q:  Okay.

A:  – because I never experienced anything in my life such as this.

Q:  All right.  **But, again, your conscious thinking about it, not flashbacks or dreaming about it or anything like that, right?**

A:  **No**.

(Edwards Dep. 69-70.) (emphasis added)

Finally, Mr. Rotfus' report states that Plaintiff's "transition back to work has been very difficult due to her anxiety and mistrust since the work incident."  This statement also conflicts with Plaintiff's deposition testimony.   In her deposition, Plaintiff explained that she started working as a part-time home health care aide as soon as her disability benefit payments expired. (Edwards Dep. 11-14.)  Approximately six months later, Plaintiff starting working as a full-time Certified Nursing Assistant ("CNA") for a nursing home, while maintaining her part-time position as a home health care aide.   (*Id*. 8-11.)   Plaintiff juggled both jobs, working approximately 40 hours per week as a CNA and 15-25 hours per week as a home health care aide, for approximately seven months.  (*Id*.)  Because the demands of both jobs became too much of a burden, Plaintiff changed to a part-time schedule at the nursing home; however, she continues to work between 45 – 55 total hours per week.  (*Id*.)  At no point in her deposition did Plaintiff state – or even infer – that anxiety or mistrust impacted her busy work schedule in any way.

These fundamental misapprehensions are not merely fodder for cross-examination. Rather, they are so fundamental as to require the Court to exercise its gatekeeper function under *Daubert* and its progeny.  For the reasons set forth below, this Court should grant Defendant's Motion and strike Plaintiff's expert witnesses, Dr. Espinosa-Guanzon and Mr. Rotfus.

**Law and Argument**

**A.      Standard of Review.**

 1.  Expert Disclosures under the Federal Rules of Civil Procedure

  If a party intends to present testimony at trial from a witness who is retained to provide

expert testimony, Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires the party to

submit a written report, prepared and signed by the witness.  The report must include:

> (i) a complete statement of all opinions the witness will express
> and the basis and reasons for them; (ii) the facts or data considered
> by the witness in forming them; (iii) any exhibits that will be used
> to summarize or support them; (iv) the witness's qualifications,
> including a list of all publications authored in the previous 10
> years; (v) a list of all other cases in which, during the previous 4
> years, the witness testified as an expert at trial or by deposition;
> and (vi) a statement of the compensation to be paid for the study
> and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B) (i) – (vi).

  A Rule 26 expert report is "'intended to set forth the substance of the direct examination

of the expert witness," and must "disclose the data and other information considered by the

expert."'  *Washington v. McKee*, No. 4:06cv6, 2006 U.S. Dist. LEXIS 53707, at *4 (E.D. Va.

Aug. 3, 2006).  The purpose of the report is "to avoid the disclosure of 'sketchy and vague'

expert information."  *Id*. at *5.  "An expert report satisfies Rule 26(a)(2)(B) if it is 'sufficiently

complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary

depositions are avoided, and costs are reduced.'"  *Id*. (quoting *Dunkin' Donuts, Inc. v. Patel*, 174

F. Supp. 2d 202, 211 (D. N.J. 2001)).

  Failure to comply with the requirements of Rule 26(a) can result in sanctions under Rule

37 of the Federal Rules of Civil Procedure.  Rule 37(c)(1) states:

> If a party fails to provide information <u>or</u> identify a witness as
> required by Rule 26(a) or (e), the party is not allowed to use that
> information or witness to supply evidence on a motion, at a

> hearing, or at trial, unless the failure was substantially justified or
> is harmless.

Fed. R. Civ. P. 37(c)(1) (emphasis added).

### 2. Rule 702 of the Federal Rules of Evidence

Under Rule 702 of the Federal Rules of Evidence, as interpreted by *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), district courts are tasked with a "gatekeeping role" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Perkins v. United States*, 626 F.Supp.2d 587, 592 (E.D. Va. 2009) (citing *Daubert,* 509 U.S. at 589, 597). When a judge is faced with scientific testimony, the Court must conduct a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Perkins,* 626 F.Supp.2d at 592; *see also Daubert,* 509 U.S. at 592-93; *Cooper v. Smith & Nephew, Inc.,* 259 F.3d 194, 199 (4th Cir. 2001). The end goal for the Court is to make certain that any expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999).

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

An expert's opinion is not to be accepted merely because it is articulated, but must instead have a sufficient factual basis. *Anderson v. Nat'l R.R. Passenger Corp.,* 866 F. Supp.

937 (E.D. Va. 1994), *aff'd*, 74 F.3d 1230 (4th Cir. 1996).  The burden is on Ms. Edwards.  The proponent of the expert testimony bears the burden of establishing admissibility by a preponderance of the evidence.  *Cooper*, 259 F.3d at 199; *see also Perkins,* 626 F.Supp.2d at 592.

**B.**      **Plaintiff Failed to Submit a Report for Dr. Espinosa-Guanzon.**

Plaintiff failed to submit any expert report or disclosure on behalf of Dr. Espinosa-Guanzon.  Therefore, it cannot be disputed that Plaintiff has not provided the information required under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure in regards to Dr. Espinosa-Guanzon.  Defendant received (i) no statement as to Dr. Espinosa-Guanzon's opinions and the reasons for them; (ii) no description of the facts and data Dr. Espinosa-Guanzon considered in forming her opinions; (iii) no identification of any potential exhibits; and (iv) no description of any of Dr. Espinosa-Guanzon's qualifications, publications, prior expert testimony, or compensation.

Dr. Espinosa-Guanzon's non-existent report and disclosure eliminate no surprises, and mandate additional depositions and increased costs – exactly the problems Rule 26(a)(2)(B) intended to avoid.  *See Washington v. McKee*, No. 4:06cv6, 2006 U.S. Dist. LEXIS 53707, at *4-5 (E.D. Va. Aug. 3, 2006).  This Court should grant Defendant's motion and strike Dr. Espinosa-Guanzon as an expert witness for Plaintiff.

**C.**      **Mr. Rotfus' Report is Inadequate and his Intended Testimony Lacks Reliability.**

Although Mr. Rotfus provided a one-paragraph report, it is entirely insufficient under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.  While Mr. Rotfus provides a few statements concerning Plaintiff's symptoms, he fails utterly to provide anything close to a full and complete statement of his opinions and the facts supporting his opinions.  The report makes no mention of potential exhibits or Mr. Rotfus' qualifications, publications, prior expert

testimony, or compensation, as required by Rule 26(a)(2)(B).

Throughout the course of discovery, Plaintiff provided certain medical records attributed to Mr. Rotfus; however, the majority of the records that mention a PTSD diagnosis are conclusory and unilluminating. For example, Mr. Rotfus submitted a handful of letters similar to one dated May 13, 2008, that stated:

> To Whom it May Concern: Ms. Edwards has been seen for Re-Evaluation. She continues to suffer from symptoms of Post Traumatic Stress Disorder secondary to the fact that she discovered that she was being watched in the shower room through a "peep-hole." This area was supposed to be private with no male access. She is unable to work at this time due to her symptoms. We will re-evaluate in thirty days.

(May 13, 2008 Letter from Mr. Rotfus, Ex. 7.)[3] None of these letters, the expert report, or any other documents received provide sufficient details to meet the requirements of Rule 26(a)(2)(B).

In addition, Mr. Rotfus' report and anticipated testimony lacks the reliability and factual basis required for admissibility under Federal Rule of Evidence 702, as well as *Daubert v. Merrell Dow Pharms., Inc*. 509 U.S. 579 (1993) and its progeny. As explained above, Rule 702 of the Federal Rules of Evidence require expert opinions to be (i) based on sufficient facts or data, (ii) the product of reliable principles and methods; and (iii) based on a reliable application of the principles and methods to the facts of the case. *See* Fed. R. Evid. 702. However, Mr. Rotfus appears to base his opinions primarily on Plaintiff's self-reporting, without regard to the accuracy of Plaintiff's statements (or the consistency of Ms. Edwards' self-reporting with her other statements or her Amended Complaint). This approach to expert opinion is unacceptable.

In *Perkins v. United States*, 626 F.Supp.2d 587, 589 (E.D. Va. 2009), the plaintiff filed

---

[3]    As explained, Mr. Rotfus' opinions also are based on false assumptions. His May 13, 2008 letter appears to be based on "the fact that she was being watched in the shower room through a 'peep-hole.'" The undisputed facts show that Plaintiff's co-worker, Ms. Felicia Tennessee, opened the door while both women were fully clothed and found Mr. Hernandez in the area outside the door. There is nothing to support an inference, as Mr. Rotfus' report suggests, that Plaintiff was peeped on while showering.

suit against the United States for injuries allegedly sustained from an automobile accident with an FBI employee.   The plaintiff sought to rely on opinions from her orthopedic surgeon regarding injury causation.  The United States moved to exclude the expert's causation testimony as unreliable under *Daubert* and its progeny because the opinions were "based solely on [the plaintiff's] self-report that the injuries were caused by the motor vehicle accident."  *Id.* at 592. The court recognized that merely adopting a patient's self-report "fails the fourth of the factors laid out by the notes of the Advisory Committee to the 2000 Amendments to Rule 702 of the Federal Rules of Evidence:  'Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting.'"  *Id.* (citing *Bowers v. Norfolk Southern Corp.,* 537 F. Supp. 2d 1343, 1351, 1358 (M.D. Ga. 2007)).

Similarly, in *Bowers*, the plaintiff filed suit against his employer for back and neck injuries allegedly sustained from excessive vibrations on a locomotive.  The plaintiff offered an expert opinion from an orthopedist regarding causation.  *Bowers,* 537 F. Supp. 2d at 1345-46, 1352.   The defendants attacked the reliability of the expert's opinions under Rule 702 and *Daubert.*  In deciding to exclude the expert's causation testimony as unreliable, the court noted: "Moreover, it appears from the record that [the expert] simply took Plaintiff's word for what happened and adopted that explanation as his own opinion on causation."  *Id.* at 1357.

Courts recognize that "expert witnesses have the potential to 'be both powerful and quite misleading.'"  *Cooper,* 259 F.3d at 199 (citing *Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 261 (4th Cir. 1999)).   As such, this Court, in its gatekeeping role, must assess whether an expert's reasoning and methodology is scientifically valid and properly applied to the facts of the case.  *See id.*  Further, the court must determine whether the expert testimony is (1) based on sufficient facts, (2) the product of reliable principles, and (3) the result of a reliable application of

principles to facts.  *See* Fed. R. Evid. 702.  To be reliable, the expert opinion must be "based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods."  *Cooper,* 259 F.3d at 200. Expert testimony that fails to meet the above criteria or that "has a greater potential to mislead than to enlighten," should be excluded.  *Westberry,* 178 F.3d at 261.

Mr. Rotfus' report lacks any hint of the degree of reliability required by Rule 702.  The report contains statements that are inconsistent with the allegations of Plaintiff's Amended Complaint and the undisputed facts uncovered during discovery.  Contrary to Mr. Rotfus' report, there were not "at least several men in the vicinity when this incident occurred," there was one. Plaintiff has not suffered flashbacks of the locker room incident.  Plaintiff was fully clothed at the time the holes were identified.  Defendant took Plaintiff's report seriously and, within hours of learning of Plaintiff's report, the holes in the door were caulked.  The entire door was later replaced.  Defendant interviewed the farm workers and the co-worker who allegedly peeped was terminated.  Clearly, Ms. Rotfus' report is not based on sufficient, accurate facts and cannot be deemed reliable under Rule 702.

In addition, as in *Bowers*, it appears that Mr. Rotfus simply took Plaintiff's word (on any given day) for what happened and adopted that explanation as his own opinion as to the causation of her mental health issues, as opposed to examining Plaintiff's full mental health history and developing a reasoned conclusion therefrom.

This Court should strike Mr. Rotfus as an expert witness in this matter.

## Conclusion

For the reasons set forth above, Defendant respectfully requests that this Court grant its Motion and strike Plaintiff's expert witnesses, Dr. Espinosa-Guanzon and Mr. Rotfus.

MURPHY-BROWN, LLC

_____/s/_____
John M. Bredehoft (VSB No. 33602)
Mark E. Warmbier (VSB No. 77993)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3000
Facsimile:  (757) 624-3169
jmbredehoft@kaufcan.com
mewarmbier@kaufcan.com
*Attorneys for Defendant*

Frank A. Edgar Jr.  (VSB No. 36833)
KAUFMAN & CANOLES, P.C.
11815 Fountain Way, Suite 400
Newport News, VA 23606
Telephone: (757) 873-6300
Facsimile: (757) 873-6359
faedgarjr@kaufcan.com
*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of September 2011, a true copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Henry L. Marsh, III, Esq.
Hill, Tucker & Marsh
422 East Franklin Street, Suite 301
Richmond, Virginia  23219
804-648-9074
htm@htm-law.com
*Attorneys for Plaintiff*

Henry E. Howell, III, Esq.
The Eminent Domain Litigation Group, P.L.C.
One East Plume Street
Norfolk, Virginia 23510
757-446-9999
heh@eminentdomaingroup.us
*Attorneys for Plaintiff*

_____/s/_____
John M. Bredehoft (VSB No. 33602)
Mark E. Warmbier (VSB No. 77993)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3000
Facsimile:   (757) 624-3169
jmbredehoft@kaufcan.com
mewarmbier@kaufcan.com
*Attorneys for Defendant*

Frank A. Edgar Jr.  (VSB No. 36833)
KAUFMAN & CANOLES, P.C.
11815 Fountain Way, Suite 400
Newport News, VA 23606
Telephone: (757) 873-6300
Facsimile: (757) 873-6359
faedgarjr@kaufcan.com
*Attorneys for Defendant*

11271690_2.DOC